SAMUELS, J.
The contract between William Ralston, Elizabeth Ralston and David Ralston, of the date June 3d, 1819, is vague and indefinite in regard to the subjects involved in this suit. It seems from the plat of the land as divided by that contract, that the way provided thereby was intended for the benefit of Elizabeth Ralston in a small degree, and that it was highly important, if not indispensably necessary, to the enjoyment of David Ralston’s portion of the land. William Ralston however, could fully enjoy the land assigned him in the partition without this way, and his interest therein, if any, must have been very small. In regard to the acre of land which Elizabeth and David respectively were to convey to William, the selection ‘was left to Elizabeth and David; and as they might locate those acres detached from each other and in remote and inconvenient places, as McCue after-wards did, it is difficult to perceive what substantial interest of William Ralston could be promoted by a specific performance of the agreement in regard thereto. Thus the case stood between the parties to the original agreement. But the relations of those parties and the condition of the property itself have been since changed, and other parties have acquired an interest in the subject. William Ralston united in the deed of March 8th, 1829, conveying thereby all his interest in the two-thirds of the land held by them, of which the two acres in question formed a part. He made no reservation of those two acres nor of the way, but united in the deed for the purpose of enabling David and Elizabeth to sell and convey. He also sold and conveyed to David Ralston the 18 acres 3 roods and 28 poles of land lying south of the creek, to which part only of all his land the way could be of any advantage. He stood quietly looking on when the sale was made to Pence, giving no notice of the equitable claims now asserted. After all this, at the end of nearly twenty years from the date of the original contract, and at the end of nearly sixteen years after his reversionary estate had vested in possession, he filed his bill for specific execution of the contract in regard to the two acres of land and in regard to the way; and this too against McCue, a purchaser, having no actual notice, who had purchased of Pence’s executor, whose testator had also purchased without actual notice. Against each of these purchasers complainant makes out a doubtful case of constructive notice.
On consideration of the whole case, I am of opinion that complainant’s claim is too old and stale to be enforced by. a court of equity; that in the beginning he had too little interest in the subjects now in controversy *to call for the interposition of such court; that the change
in the relations of the parties owning the land, and in the condition and title of the land itself, make it improper to grant the relief prayed; that the deed of March 8th, 1829, passed any claim complainant may have had to the two acres of land; that the alleged right of way was at first of little or no value to complainant, and having parted with the land to which the way is said to have given value, and having allowed the way to be obstructed or closed for years, it must be held that this right of way, if not entirely lost, has become a mere personal right. The general principles governing courts of equity in regard to specific performance of contracts may be found in the cases. Anthony v. Leftwitch, 3 Rand. 238; Pigg v. Corder, 12 Leigh 69; Bryan v. Loftus’ adm’r, 1 Rob. R. 12.
I am of opinion to reverse the decree and dismiss the bill, giving the appellant a decree for the costs in both courts, but without prejudice to the right of the appellee to the way in the proceedings mentioned, if he have any such right which may be asserted in a court of common law jurisdiction.
The other judges concurred in the opinion of Samuels, J.
Decree reversed and bill dismissed.